**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

---

| | | |
|---|---|---|
| **NORTHEND INVESTORS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 1:16-cv-01137-STA-egb** |
| | ) | |
| **SOUTHERN TRUST INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL
MOTION TO DISMISS AND GRANTING ITS MOTION TO BIFURCATE**

---

Before the Court is Defendant Southern Trust Insurance Company's Motion to Dismiss

Punitive Damages and All Costs Claims, filed on September 26, 2016. (ECF No. 24.) Plaintiff

Northend Investors, LLC ("Northend") has responded in opposition (ECF No. 29), and

Defendant has filed a reply brief (ECF No. 37), making the matter ripe for adjudication.

Defendant has also moved, in the alternative, to bifurcate punitive damages issues at trial. (ECF

No. 34.) Plaintiff has not responded to this motion. For the reasons discussed below,

Defendant's partial motion to dismiss is GRANTED IN PART AND DENIED IN PART and its

alternative motion to bifurcate is GRANTED.[1]

## I.    BACKGROUND

The following facts are gleaned from Plaintiff's amended complaint, which the Court

accepts as true for the purposes of the instant motion. (*See* ECF No. 11; *see also Scheuer v.

Rhodes*, 416 U.S. 232, 236 (1974).) Plaintiff owned a commercial building in Lexington,

---

[1] The Court also declines to rule on two other ancillary issues at this stage of the
proceedings. *See infra* Section III.C.

Tennessee, containing warehouse and office space, and leased the premises to a third party. Plaintiff purchased a three-year policy from Defendant, a Georgia corporation, insuring the premises against direct physical loss or damage. On February 4, 2015, an accidental fire occurred on the premises, causing physical damage. Plaintiff timely reported the loss, which had occurred during the policy term, to Defendant, which then sent an adjuster to inspect the property. The adjuster observed extensive smoke damage, specifically to the vinyl-backed ceiling and wall insulation, and suggested that Defendant consider hiring an electrical contractor and an "environmentalist/hygienist" to further investigate the extent of the damage. (ECF No. 11 at 4.) Another inspector who surveyed the damage determined that the insulation needed to be replaced and other significant restoration work was required.

Defendant concluded that a professional cleaning of the warehouse would be sufficient to remedy the damage caused by the fire. Plaintiff disagreed, insisting that significant repairs were needed. The parties, through representatives, communicated extensively regarding this dispute and the cost of cleaning the premises. Plaintiff eventually hired its own experts to survey the damage; they determined that significant restorative work was necessary, as soot had accumulated in the wall cavities and conduits inside the building. On December 3, 2015, Plaintiff submitted to Defendant a sworn proof of loss statement formalizing its claim, with an estimate of $2,570,070.39. To date, Defendant has made no payments to Plaintiff.

On April 29, 2016, Plaintiff filed suit in the Circuit Court of Henderson County, Tennessee at Lexington, alleging breach of contract and statutory bad faith, and requesting compensatory damages, punitive damages, and costs. (ECF No. 1-1.) Defendant removed the case to this Court on diversity grounds on June 6, 2016 (ECF No. 1), and Plaintiff filed an

amended complaint soon after (ECF No. 11). Defendant now moves to dismiss the claims for punitive damages, attorney's fees, and costs, averring that Tennessee law limits Plaintiff's potential recovery.

## II. LEGAL STANDARD

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). However, legal conclusions or unwarranted factual inferences need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). Under Federal Rule of Civil Procedure 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A

3

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. ANALYSIS

"In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state." *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). This Court must apply state law in accordance with the decisions of the state's highest court, in this case, the Tennessee Supreme Court. *Talley*, 223 F.3d at 326. If the court has not spoken on a particular issue, this Court must attempt to anticipate how it would rule. *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). "Decisions of the Tennessee Court of Appeals are viewed as persuasive authority unless it is shown that the Tennessee Supreme Court would decide the issue differently." *Roberts v. Allstate Ins. Co.*, No. 2:09-0016, 2009 WL 2851017, at *2 (M.D. Tenn. Aug. 29, 2009) (citing *Dow Corning Corp.*, 419 F.3d at 549). Also, the Court obviously "must follow . . . Sixth Circuit precedent." *Smith v. Hoffner*, No. 14-cv-14067, 2014 WL 6986436, at *1 (E.D. Mich. Dec. 10, 2014).

### A. The Bad-Faith Statute and Punitive Damages

#### 1. Tennessee statutory development

The Tennessee Supreme Court has held that "[a]lthough as a general matter, punitive damages are not available in a breach of contract case, [they] may be awarded . . . under certain

circumstances."[2]  *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 211 n.14 (Tenn. 2012)

(citation omitted).  In a breach of contract action involving an insurance policy, an insured may

seek a statutory penalty in addition to compensatory damages, pursuant to Tennessee Code

Annotated section 56-7-105 ("the bad-faith statute").[3]  The bad-faith statute "provides for a 25

percent penalty against an insurance company, in addition to the loss and interest, where the

refusal to pay an insurance claim within 60 days is not in good faith."  *Gaston v. Tenn. Farmers*

*Mut. Ins. Co.*, 120 S.W.3d 815, 822 (Tenn. 2003).  The relevant section of the statute reads thus:

> The insurance companies of this state, and foreign insurance companies and other
> persons or corporations doing an insurance or fidelity bonding business in this
> state, in all cases when a loss occurs and they refuse to pay the loss within sixty
> (60) days after a demand has been made by the holder of the policy or fidelity
> bond on which the loss occurred, shall be liable to pay the holder of the policy or
> fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding
> twenty-five percent (25%) on the liability for the loss; provided, that it is made to
> appear to the court or jury trying the case that the refusal to pay the loss was not
> in good faith, and that the failure to pay inflicted additional expense, loss, or
> injury including attorney fees upon the holder of the policy or fidelity bond; and
> provided, further, that the additional liability, within the limit prescribed, shall, in
> the discretion of the court or jury trying the case, be measured by the additional
> expense, loss, and injury including attorney fees thus entailed.

Tenn. Code Ann. § 56-7-105(a).

In *Myint v. Allstate Insurance Co.*, the Tennessee Supreme Court held that this bad-faith

penalty did not preclude plaintiffs in insurance cases from also pursuing claims for treble

---

[2] Specifically, "an award of punitive damages is limited to the most egregious cases and
is proper only where there is clear and convincing proof that the defendant has acted either
intentionally, fraudulently, maliciously, or recklessly."  *Rogers*, 367 S.W.3d at 211 n.14 (internal
quotation marks omitted).

[3] Tennessee does not recognize the separate tort of bad faith.  *Fred Simmons Trucking,
Inc. v. U.S. Fid. & Guar. Co.*, No. E2003-02892-COA-R3-CV, 2004 WL 2709262, at *3 (Tenn.
Ct. App. Nov. 29, 2004) (citing *Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615 (Tenn. Ct.
App. 1986)).

damages under the Tennessee Consumer Protection Act ("TCPA"). 970 S.W.2d 920 (Tenn.

1998); *see* Tenn. Code Ann. § 47-18-101 *et seq*. In other words, the TCPA was "complementary

legislation" to the insurance bad-faith statute—plaintiffs could seek both remedies. *Myint*, 970

S.W.2d at 926 (emphasis omitted). In 2011, however, the Tennessee General Assembly passed

Tennessee Code Annotated section 56-8-113 in response to *Myint*. This section provides that

> Notwithstanding any other law, title 50 and this title shall provide the sole and exclusive statutory remedies and sanctions applicable to an insurer, person, or entity licensed, permitted, or authorized to do business under this title for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance as such term is defined in § 56-7-101(a). Nothing in this section shall be construed to eliminate or otherwise affect any:
>
> (1) Remedy, cause of action, right to relief or sanction available under common law;
>
> (2) Right to declaratory, injunctive or equitable relief, whether provided under title 29 or the Tennessee Rules of Civil Procedure; or
>
> (3) Statutory remedy, cause of action, right to relief or sanction referenced in title 50 or this title.

Tenn. Code Ann. § 56-8-113.

Defendant argues that these two statutes preclude Plaintiff from recovering any punitive

damages beyond the twenty-five percent penalty explicitly provided by the bad-faith statute.

Tennessee state courts and federal courts alike have grappled with this argument several times,

bearing inconsistent results. The Court first looks to the decisions of the Tennessee Supreme

Court for guidance on this state law issue. In a recent order, in which it declined to answer two

related questions of law certified to it by this Court, the Tennessee Supreme Court noted that

"[t]he issue of the availability of the common law remedy of punitive damages in addition to the

statutory remedy of the bad faith penalty is one which has not before been addressed by this

Court." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, No. M2015-02349-SC-R2-CV (Tenn. June 23, 2016) (per curiam);[4] *see Lindenberg v. Jackson Nat'l Life Ins. Co.*, 147 F. Supp. 3d 694 (W.D. Tenn. 2015).

### 2.      Conflicting federal and state court precedent

Defendant cites *Heil Co. v. Evanston Insurance Co.* in support of its argument. 690 F.3d 722 (6th Cir. 2012). In that case, the Sixth Circuit held that the Tennessee bad-faith statute "precludes punitive damages . . . because it provides the exclusive extracontractual remedy for an insurer's bad faith refusal to pay on a policy." *Id.* at 728. This Court has already reexamined this holding in light of subsequent developments in Tennessee state court precedent. *See Carroll v. Nationwide Prop. & Cas. Co.*, No. 2:14-cv-02902-STA, 2015 WL 3607654, at *4 (W.D. Tenn. June 8, 2015). Specifically, in *Riad v. Erie Insurance Exchange*, 436 S.W.3d 256 (Tenn. Ct. App. 2013), the Tennessee Court of Appeals declined to follow *Heil*:

> The *Riad* Court noted that *Heil* "ignore[d] the *Myint* progeny of cases, providing for the application of the TCPA to cases filed prior to the applicability of section 56–8–113." Thus, the plaintiff "was entitled to recover any damages applicable in breach of contract actions and was not statutorily limited to the recovery of the insured loss and the bad faith penalty." Furthermore, the damages available in breach-of-contract actions before 2011 *included punitive damages*, although only in rare cases.

*Carroll*, 2015 WL 3607654, at *4 (footnotes omitted) (quoting *Riad*, 436 S.W.3d at 276).

This decision created a clear split of authority between the Tennessee Court of Appeals and the Sixth Circuit, with no guidance from the Tennessee Supreme Court. *See Am. Nat. Prop. & Cas. Co. v. Stutte*, No. 3:11-cv-219, 2015 WL 1650933, at *3 (E.D. Tenn. Apr. 14, 2015). In

---

[4] Defendant has filed a copy of this unpublished order as an exhibit to its reply brief. (*See* ECF No. 37-1.)

*Carroll*, this Court found "'no other persuasive data that the Tennessee Supreme Court' would disagree with the *Riad* court's" holding and "allowed the plaintiffs to seek common-law punitive damages alongside the statutory bad-faith penalty." *Carroll*, 2015 WL 3607654, at *4 (quoting *Stutte*, 2015 WL 1650933, at *4) (internal quotation marks omitted). This is consistent with other holdings of this Court since *Riad*. *See Lindenberg v. Jackson Nat'l Life Ins. Co.*, No. 2:13-cv-02657-JPM-cgc, 2014 WL 11332306, at *6 (W.D. Tenn. Dec. 9, 2014) (McCalla, J.) ("Although *Riad* is not binding precedent under *Erie* and its progeny, the Court finds the reasoning in *Riad* persuasive evidence that the Tennessee Supreme Court would hold that punitive damages were available in breach of insurance contract cases at the time *Riad* was decided."); *Pankey v. S. Pioneer Prop.*, No. 1:14-cv-01008-JDB-egb, 2014 WL 11514533, at *3 (W.D. Tenn. Aug. 12, 2014) (Breen, J.).[5]

### 3. The effect of section 56-8-113

Defendant attempts to distinguish *Riad* by noting that the court in that case dealt with a claim that arose before 2011, when the Tennessee General Assembly passed section 56-8-113. (ECF No. 37 at 4; *see Riad*, 436 S.W.3d at 274 n.3.) Its argument proceeds thus: *Riad*'s primary focus in its rejection of *Heil* was the Sixth Circuit overlooking the Tennessee Supreme Court's decision in *Myint* and its progeny—cases that dealt with the TCPA and its interplay with the bad-faith statute. When the Tennessee General Assembly abrogated *Myint* with section 56-8-113, the argument goes, this severed the connection between the TCPA and the bad-faith statute,

---

[5] This is not unanimous across our circuit, however, as other courts have followed the Sixth Circuit's ruling, even after *Riad*'s issuance. *See Spring Place Church of God of Prophecy v. Bhd. Mut. Ins. Co.*, No. 1:13-CV-405, 2015 WL 12531988, at *4 (E.D. Tenn. Mar. 16, 2015) (distinguishing *Riad*); *Jeffers v. Metro. Life Ins. Co.*, No. 3-13-0065, 2014 WL 347847, at *4 (M.D. Tenn. Jan. 31, 2014) (without mentioning *Riad*).

eliminating the availability of punitive damages along with it. For claims arising after April 29, 2011, Defendant insists that *Riad* does not apply and urges that the Court follow *Heil* or the Tennessee Court of Appeals' pre-*Myint* "holding that the bad faith statute . . . provides the exclusive remedy for an insurer's failure to pay a claim in bad faith." *Leverette v. Tenn. Farmers Mut. Ins. Co.*, No. M2011-00264-COA-R3CV, 2013 WL 817230, at *18 (Tenn. Ct. App. Mar. 4, 2013) (citing *Chandler*, 715 S.W.2d at 619).

The Eastern District of Tennessee appears to have followed this route. *See Stutte*, 2015 WL 1650933, at *3–5; *Spring Place Church of God of Prophecy v. Bhd. Mut. Ins. Co.*, No. 1:13-CV-405, 2015 WL 12531988, at *4 n.4 (E.D. Tenn. Mar. 16, 2015). This Court, however, has not. In *Lindenberg v. Jackson National Life Insurance Co.*, the Court engaged in a detailed discussion of precedent and statutory interpretation before holding that punitive damages are available in addition to the bad-faith statute's penalty. 2014 WL 11332306, at *9. The Court first established that punitive damages were available in breach of contract cases at the time the Tennessee Supreme Court decided *Myint*. *Id.* at *5. This point appears to be uncontroversial. *See Myint*, 970 S.W.2d at 925 ("We find nothing in . . . the bad faith statute which limits an insured's remedies to those provided therein."); *see also Rogers*, 367 S.W.3d at 211 n.14 (confirming the availability of punitive damages in "the most egregious [breach of contract] cases").

"[T]he question left to the *Lindenberg* court was whether the 2011 amendments precluded punitive damages in breach-of-insurance-contract claims." *Carroll*, 2015 WL 3607654, at *4.

> First, although the General Assembly's passage of section 56–8–113 was a repudiation of *Myint*, *Myint*'s fundamental holding was that section 56–7–105 did

not preclude claims under the TCPA. Section 56–8–113, in response to *Myint*, states that "this title shall provide the *sole and exclusive statutory remedies and sanctions* . . . under this title for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance."

*Id.* (quoting Tenn. Code Ann. § 56-8-113) (emphasis added). The key word here is "statutory." The Court in *Lindenberg* reasoned that, because the terms "remedies" and "sanctions" are not separated by a comma, the word "statutory" modifies them both. 2014 WL 11332306, at *7. This begets the natural inference that common law remedies and sanctions, including common law punitive damages, remained unaffected. *Id.* Beyond that, the statute makes clear that "[n]othing in this section shall be construed to eliminate or otherwise affect any . . . [r]emedy, cause of action, right to relief or sanction available under common law." Tenn. Code Ann. § 56-8-113. The legislative history of section 56-8-113 also supports this interpretation. "Because the bad faith cause of action under the Consumer Protection Act was statutory, the legislative intent to reverse *Myint* is consistent with the explicit language of § 113, which indicates that the Tennessee General Assembly intended only to preclude remedies and sanctions that were statutory in nature." *Lindenberg*, 2014 WL 11332306, at *8.

In light of the prior decisions of this Court and the examinations of state court precedent, statutory interpretation, and legislative history therein, the Court concludes that the Tennessee Supreme Court would rule that neither the bad-faith statute nor section 56-8-113 vitiates a properly pleaded common law claim for punitive damages in a breach of contract action under Tennessee law. Defendant's motion to dismiss Plaintiff's punitive damages claim is DENIED.

B.    **Bifurcation**

Defendant has filed a separate motion to bifurcate the trial, in the event that Plaintiff's punitive damages claim survives the motion to dismiss. (ECF No. 34.) Plaintiff has not

responded. "Although a federal court sitting in diversity applies the law of the forum state . . .

the conduct of discovery and bifurcation are matters of federal procedural law." *Riddle v. Royal*

*Indem. Co.*, No. 3:05CV-540-S, 2007 WL 542389, at *1 (W.D. Ky. Feb. 16, 2007) (citing *Hanna*

*v. Plumer*, 380 U.S. 460 (1965); *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938)). Federal Rule

of Civil Procedure 42 provides that a district court "may order a separate trial of one or more

separate issues, claims, crossclaims, counterclaims, or third-party claims" for any of the

following reasons: "convenience, to avoid prejudice, or to expedite and economize." Fed. R.

Civ. P. 42(b). "The decision of whether to isolate the punitive damages phase of the trial is

within the sound discretion of the trial court." *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1213–14

(8th Cir. 1999); *see Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 482 (6th Cir.

2007).

Federal district courts sitting in diversity in Tennessee have exercised their discretion

under Rule 42 to bifurcate punitive damages issues in a manner consistent with state law. *See*

*Harris v. Ford Motor Co.*, No. 3:04-0144, 2006 WL 5164774, at *3 (M.D. Tenn. July 11, 2006)*;

*Rotello v. Clayton Homes of Del., Inc.*, No. 303CV-573, 2006 WL 842931, at *1 (E.D. Tenn.

Mar. 28, 2006) ("Although the question of bifurcation is a matter of federal law . . . the

substantive law of the punitive damages at issue in this case is a matter of [Tennessee] state law."

(citing *Cappello v. Duncan Aircraft Sales of Fla., Inc.*, 79 F.3d 1465, 1474 (6th Cir. 1996))); *see*

*also VJ, LLC v. State Auto Prop. & Cas. Ins. Co.*, No. 2:14-cv-02919-SHM-dkv, at *39–40

(W.D. Tenn. Aug. 3, 2016) (holding similarly and collecting authority).[6] "During the first phase,

---

[6] Plaintiff has filed a copy of this unpublished order as an exhibit to its response. (*See* ECF No. 29-1.)

the factfinder shall determine (1) liability for, and the amount of, compensatory damages and (2) liability for punitive damages." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). Evidence of a defendant's "financial affairs, financial condition, or net worth is not admissible" at this stage. *Id.* If the trier of fact finds the defendant liable for punitive damages, a second, separate phase of the trial commences in order to determine the amount of punitive damages. *Id.* The Court finds that following this procedure will minimize the potential prejudice to Defendant. In light of this concern, and the fact that the motion is unopposed, Defendant's Motion to Bifurcate is GRANTED.

### C.      Election of Remedies and Limitation on Punitive Damages

Defendant advances another argument in the alternative: that Plaintiff cannot recover both common law punitive damages and the statutory penalty under the bad-faith statute, and must choose which remedy to collect if the jury awards both. (*See* ECF No. 37 at 6–7.) The Tennessee Supreme Court has held that "[o]nly after the amount of punitive damages and multiple damages have been assessed is the plaintiff required to make an election between the two types of remedies."[7] *Concrete Spaces Inc. v. Sender*, 2 S.W.3d 901, 911 (Tenn. 1999). Therefore, this argument is premature and the Court declines to rule on it at this stage, before the jury has awarded anything.

Defendant also avers that any punitive damages award would be limited by Tennessee's statutory cap. Tennessee Code Annotated section 29-39-104 provides that "[p]unitive or exemplary damages" must not exceed either two times the total award of compensatory damages

---

[7] The two types of damages at issue in *Sender* were common law punitive damages and statutory treble damages under the TCPA. *See* 2 S.W.3d at 906–907. The Tennessee Supreme Court has not specifically addressed whether the election of remedies doctrine would apply to awards of common law punitive damages and section 56-7-105's statutory penalty.

or $500,000, whichever is greater.  Tenn. Code Ann. § 29-39-104(a)(5).  The Court also declines

to rule on this issue, for now.  "If the cap applies, it will have no relevance to the case unless a

jury finds that [Plaintiff is] entitled to punitive damages.  Moreover, Tennessee law prohibits

disclosure of the limitation to the jury; therefore, the Court need not address the cap's

applicability at this juncture."[8]  *Carroll*, 2015 WL 3607654, at *6 (footnote omitted).

### D.    Attorney's Fees and Costs

Finally, Defendant moves to dismiss Plaintiff's claims for attorney's fees and "all costs

incurred by Northend as a result of this action."  (ECF No. 11 at 16.)  "Tennessee, like most

jurisdictions, follows the 'American Rule' concerning attorney's fees and 'will not allow such

fees to be shifted unless there is an express provision in a contract, statute, or some other

equitable ground' for doing so."  *Pankey*, 2014 WL 11514533, at *4 (quoting *Holcomb v. Cagle*,

277 S.W.3d 393, 397–98 (Tenn. Ct. App. 2008) (citations omitted)).  In response, Plaintiff cites

the text of the bad-faith statute itself, pointing to the conditions precedent to an award of the

twenty-five percent penalty:

> that the refusal to pay the loss was not in good faith, and that the failure to pay
> inflicted additional expense, loss, or injury *including attorney fees* upon the
> holder of the policy or fidelity bond; and provided, further, that the additional
> liability, within the limit prescribed, shall, in the discretion of the court or jury
> trying the case, be measured by the additional expense, loss, and injury *including
> attorney fees* thus entailed.

Tenn. Code Ann. § 56-7-105(a) (emphases added).  Because they are explicitly mentioned in the

statute, Plaintiff asserts that attorney's fees are available in this case.

---

[8] The damages cap issue also implicates two thorny questions of Tennessee constitutional
law, which have remained unresolved since *Lindenberg*.  *See Lindenberg v. Jackson Nat'l Life
Ins. Co.*, No. M2015-02349-SC-R2-CV (Tenn. June 23, 2016) (per curiam), *available at* ECF
No. 37-1; *see also* 147 F. Supp. 3d 694, 707–08 (W.D. Tenn. 2015).

The Tennessee Court of Appeals has noted that section 56-7-105's statutory penalty "is not simply a punitive award but allows for the recovery of the additional damages caused by a breach of the insurance policy." *McColgan v. Auto-Owners Ins. Co.*, No. W2002-00114-COA-R3-CV, 2002 WL 31322538, at \*5 (Tenn. Ct. App. Oct. 11, 2002). "The burden is upon the plaintiff to show [the] additional expense, loss, or injury." *Ray v. Shelter Ins. Companies*, No. 01A01-9208-CV-00324, 1993 WL 15151, at \*2 (Tenn. Ct. App. Jan. 27, 1993). Because Plaintiff cites no additional authority in support of its request for attorney's fees, its claim is proper only to the extent that it contemplates recovery within the limits of the bad-faith statute's twenty-five percent penalty. *Compare Burge v. Farmers Mut. of Tenn.*, No. M2016-01604-COA-R3-CV, 2017 WL 1372864, at \*10 (Tenn. Ct. App. Apr. 13, 2017) (upholding the trial court's award of the bad-faith statutory penalty that roughly equaled the plaintiffs' requested attorney's fees and fell within the twenty-five percent limit), *with id.* (denying the plaintiffs' request for attorney's fees on appeal where they "cited no basis for [such] an award").

As for the costs claim, Plaintiff focuses its response on the availability of "consequential damages" beyond the limits of the insurance policy. (ECF No. 29 at 12–13.) Plaintiff appears to conflate this term with the word "costs" and thus misses the mark. Black's Law Dictionary defines "consequential damages" as "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act," and "legal costs" as "[a]ttorney's fees and other expenditures related to a lawsuit." Black's Law Dictionary (10th ed. 2014). As far as the Court can discern, Defendant's motion does not challenge the amount or types of compensatory damages requested, but rather the sort of ancillary expenses normally associated with attorney's fees. Indeed, Plaintiff derives its requests for costs and attorney's fees from the same language

14

in the complaint that it drafted. (ECF No. 11 at 16 (requesting "all costs incurred by Northend as a result of this action").) The bad-faith statute seems to have contemplated costs to the same extent as attorney's fees. *See* Tenn. Code Ann. § 56-7-105(a) (referencing "additional expense[s]"). Therefore, the Court rules identically with respect to both the attorney's fees and the costs claims: Defendant's motion to dismiss Plaintiff's claims for attorney's fees and costs is GRANTED IN PART to the extent that they request any amount beyond the bad-faith statute's penalty, and DENIED IN PART otherwise.

## IV.    CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Punitive Damages and All Costs Claims is GRANTED IN PART AND DENIED IN PART and its Motion to Bifurcate is GRANTED.


IT IS SO ORDERED this 9th day of June, 2017.


<div style="margin-left:40%">

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

</div>