**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

NORTHEND INVESTORS, LLC,

    Plaintiff,

v.                                                               No. 1:16-cv-01137-STA-egb
                                                                    JURY DEMANDED

SOUTHERN TRUST INSURANCE COMPANY,

    Defendant.

**REPLY TO RESPONSE IN OPPOSITION TO MOTION TO LIMIT OR EXCLUDE TESTIMONY OF NEIL CARLSON**

Defendant Southern Trust Insurance Company ("Southern Trust"), by and through counsel, respectfully submits its Reply to Plaintiff's Response in Opposition to Motion to Limit or Exclude Testimony of Neil Carlson (D.E. 87).

**REPLY ARGUMENTS**

A small fire that occurred in the early morning hours of February 4, 2015 gave rise to this insurance dispute. The fire was extinguished and ServiceMaster was called to begin remediation at the Property. ServiceMaster cleaned the office area, and full operations were resumed the Monday following the fire. Northend's chief manager prevented ServiceMaster from cleaning the warehouse. Both the office area and warehouse have been in continuous use since the fire. Northend and Southern Trust have different views on the covered losses and what remediation efforts are needed at the Property. Southern Trust has maintained that the warehouse can be cleaned, just as the office space, and Northend maintains that a complete rebuild of the Property (with replacement of electrical

and HVAC components) is the only fix. Northend refused cleaning, and the parties never reached an undisputed amount of the loss.[1]

Northend's manager responsible for construction, renovation, facility management, maintenance and corporate real estate, Bob Sebastian, testified that all systems (electrical, HVAC, among others) are working at the Property. Dep. B. Sebastian 9:1-3 (D.E. 88-8). And no employee who works at the Property has stated that they could not work due to anything related to the fire. Dep. B. Sebastian 9:23-10:15 (D.E. 88-8).

In Plaintiff's response, it argues that Neil Carlson was designated as an expert to testify regarding the damage caused by the fire and the proper method of remediation of the damage. But Mr. Carlson's report and testimony show that he provided only phase 1 (presumptive level testing) and he is not an expert in remediation following a fire loss. Indeed, Mr. Carlson has never attempted what he says cannot be done in this case. And he is not qualified to render some of the opinions he seeks to offer in this case; in fact, Mr. Carlson admitted that he wouldn't be offering opinions on the works or data of the other labs employed by Northend. Yet Northend still seeks to introduce such opinions at trial.

Plaintiff's response states that Mr. Carlson will offer opinions on (1) the protocol for removal of the soot, (2) the source of contamination and (3) the reasonableness and necessity of the scope of remediation set forth by Forensic Building Science. But Mr. Carlson was only involved in the first level presumptive testing in this case. Carlson has never visited the property and has no personal knowledge of its history. Dep. N. Carlson 37:24-38:25 (D.E. 72-2). And Carlson does not have an

---

[1] Northend again references that timeframe in which it received a payment on the claim. But that ignores that there was never an undisputed amount on the claim. The parties were and remain in disagreement on an undisputed amount.

opinion on why he found different levels of soot in different areas. Dep. N. Carlson 56:12-18 (D.E. 72-2).

Plaintiff's response does nothing to show how Mr. Carlson is qualified to give the above opinions particularly in light of his admissions during his deposition that he is not privy to the other labs' techniques in this case and was not in a position to judge their methods. Dep. N. Carlson 24:13-25:23 (D.E. 72-2).

As to the scope of his analysis, Mr. Carlson testified:

Q: Okay. But with your analysis, you are able to determine, like, whether it was a wood fire or a plastic fire?

A: My analysis is not that specific. That's why it's a phase one.

Q: Okay.

A: A phase-four analysis would do the chemical analysis that helps you differentiate that.

Q: Okay. So your analysis – you would not be able to tell the difference, whether it was a gas fire or a – any other type of fire?

A: Correct. I'm just looking at the particles that are produced that appear to be soot-like or char-like.

Q: And as far as EMSL or MicroVision [who did the phase-four analysis], you're not here to provide an opinion on their finding?

A: That is correct, yes.

Dep. N. Carlson 42:11-43:3 (D.E. 72-2).

Because experts may rely on others' laboratory data in other cases does not, in and of itself, make Mr. Carlson qualified to render opinions on testing he admits he is unfamiliar with.

As to his proposed opinion on remediation (cleaning or replacement), Carlson testified (over objection),

3

> Q: And then we talked about paragraph 3 [Carlson Report] there, where you do talk about cleaning and about replacement, but, now, you are not an expert on cleaning surfaces or a restoration expert, are you?
>
> A: I'm not an expert specifically – well, let's see. I get involved with remediation. Most of my remediation expertise has been related to fungal remediation.
>
> The opinion on this one is looking at the samples I received, looking at the smoke intertwined with the – with the fibers, and – and trying – and thinking through how you would extract the smoke from the intertwined fibers in the fiberglass, and thinking that would be a very difficult task.

Dep. N. Carlson 61:13-62:4(D.E. 72-2).

Mr. Carlson further testified that, in this case, "I'm providing the laboratory work. In other cases I will actually go out and do the field investigation and take a look and try to see if I can figure out what's causing the – the problem and the situation." Dep. N. Carlson 17:7-23 (D.E. 72-2).

Mr. Carlson is not qualified to offer opinions on remediation and his opinions provide no fit or reliability between his presumptive-only testing and the necessity to undertake the extensive remediation measures he proposes. Mr. Carlson's proposed expert testimony further fails to establish how his detection of char-like or soot-like particles in samples provided to his lab necessitate replacement of all insulation and other porous material in the building and its HVAC system and components, as no methodology or principles were employed, other than by referencing an analogy to fungi by the witness to reach his conclusion. Mr. Carlson's remediation background involves fungus remediation, and he has not attempted to clean porous material following a fire. Dep. N. Carlson 68:17-69:6, 70:5-18 (D.E. 72-2). And nothing in Mr. Carlson's background as an industrial hygienist qualify him to render opinions on the scope of repairs needed at the Property. In addition, this is Mr. Carlson's first case to testify in that involves soot. Dep. N. Carlson 10:4-10 (D.E. 72-2). His opinions are, consequently, unreliable.

Plaintiff's response also suggests that Mr. Carlson can opine on remediation necessary for the HVAC system. But that's not what he testified to: Mr. Carlson testified during his deposition that he would "rely on the national association of duct cleaner guidelines[]" and was "not aware of the specific construction of – of the ductwork[.]" Dep. N. Carlson 63:15-64:11. For his opinion on this issue, he "would want to consult" with the person that's doing the remediation and would not provide an opinion on that issue "without more information." Dep. N. Carlson 64:16-65:6.

Plaintiff's discussion of Southern Trust's expert, Douglas Byron, does not save Mr. Carlson's testimony from exclusion. Mr. Byron testified that soot particulates in half of the 18 samples examined by FAST lab cannot be distinguished from 25 years of warehouse activity or soot from a small smoldering fire. REPORT OF DOUGLAS BYRON (**Exhibit A**). Additionally, Mr. Carlson made clear that he wasn't familiar with the techniques used by EMSL or MicroVision and would not be offering opinions on their work or results. *See* Dep. N. Carlson 24:13-25:23, 42:11-43:3, 61:13-62:4 (D.E. 72-2).

Mr. Carlson is not qualified to render the opinions Northend proposes, and his testimony demonstrates no fit or methodology and principles used to reach his sweeping conclusions.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its Motion to Limit or Exclude Testimony of Neil Carlson.

5

Respectfully submitted,

**HICKMAN GOZA & SPRAGINS, PLLC**

By: */s/ Hal S. Spragins Jr.*
Dawn Davis Carson (21416)
Russell B. Jordan (25493)
Hal S. (Hank) Spragins, Jr. (30360)
*Attorneys for Southern Trust*
P.O. Box 16340
Memphis, TN 38186
(901) 881-9840

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this date electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record, including:

J. Brandon McWherter, Esq.
Gilbert, Russell, McWherter, Scott, Bobbitt, PLLC
341 Cool Springs Blvd., Suite 230
Franklin TN 37067
bmcwherter@gilbertfirm.com

Clinton H. Scott, Esq.
Gilbert, Russell, McWherter, Scott, Bobbitt, PLLC
101 North Highland
Jackson, TN 38301
cscott@gilbertfirm.com

DATED: June 22, 2017

*/s/ Hal S. Spragins Jr.*
Dawn Davis Carson, #21416
Hal S. Spragins, Jr. #30360